UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A.C.P.,<br><br>Petitioner,<br><br>v.<br><br>MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-01354-KES-SKO (HC)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>Doc. 2 |

Petitioner J.A.C.P. is a noncitizen who entered the United States three years ago without lawful admission. On September 18, 2025, Immigration and Customs Enforcement ("ICE") agents arrested petitioner on a public street without a warrant. Petitioner was denied the opportunity for a bond hearing based on the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) as requiring mandatory detention during removal proceedings for all noncitizens charged with entering the United States without lawful admission. The government's new interpretation of section 1225(b)(2)(A) would subject millions of noncitizens to mandatory detention without the possibility of a bond hearing, regardless of how long they have resided in the United States and without regard to whether they pose any flight risk or danger. On

October 8, 2025, an immigration judge found that petitioner was subject to section 1225(b)(2)(A) and was therefore ineligible for release on bond.

On October 10, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2, arguing that the immigration judge erred in concluding that he was detained under 8 U.S.C. § 1225(b)(2)(A) as that statute does not apply to him.  Petitioner requests that the Court order his release or order respondents to provide him with a bond hearing under 8 U.S.C. § 1226(a).  *See id.* at 20–21.

On October 20, 2025, the government filed an opposition, Doc. 10, and on October 22, 2025, petitioner filed a reply, Doc. 11.  The Court held a hearing on October 27, 2025.  At the hearing, the Court raised with the parties whether petitioner's motion should be converted into a motion for preliminary injunction because the standard is the same and respondents had notice and opportunity to respond through a written opposition and through oral argument at the hearing.  *See* Doc. 10.  The parties agreed that the motion should be converted to one for a preliminary injunction.  As the parties agree that the motion is ripe for conversion and do not believe that additional briefing is needed, petitioner's motion is converted to a motion for preliminary injunction.  For the reasons set forth below, petitioner's motion for a preliminary injunction is granted.

**I.     Background**[1]

Petitioner fled his home country of Peru because he feared persecution.  Doc. 1 at ¶¶ 3, 21.  He entered the United States in 2021 on foot without lawful admission or inspection.  *Id.* ¶ 28; *see* Doc. 10-1, Martinez Decl. at ¶¶ 5,7.  He has lived in San Mateo, California with his brother and brother-in-law since then.  *Id.* ¶ 28; *see* Doc. 10-1, Martinez Decl. at ¶ 5.  There, he found employment, enrolled in a school to study English, obtained a valid driver's license, and maintained a clean criminal record.  Doc. 1 at ¶ 28.  Petitioner has no pending immigration

---

[1] This section includes information from petitioner's verified petition and the parties' other filings. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

2

1  applications.[2]  Doc. 1 at ¶ 29; *see* Doc. 10-1, Martinez Decl. at ¶ 6.

2  On September 18, 2025, an ICE agent in civilian clothing stopped petitioner on the street and asked about another individual. Doc. 1 at ¶ 30. Petitioner said he did not know the individual. *Id.* Other ICE agents with badges and vests then arrived, told petitioner they were ICE agents, and asked petitioner to identify himself and produce his documents. *Id.* Petitioner showed them his passport *Id.* The agents confirmed that petitioner was not the person they were looking for, but they asked petitioner if he had a work permit or other documentation of legal presence in the United States. *Id.* Petitioner confirmed that he did not. *Id.* ¶¶ 30–31. He admitted to the agents that he had entered the United States without inspection three years earlier. Doc. 1 at ¶ 31; Doc. 10-1, Martinez Decl. at ¶¶ 6–7. The ICE agents then took petitioner into custody and transported him to an ICE office in San Francisco for further processing. Doc. 1 at ¶¶ 30–31; Doc. 10-1, Martinez Decl. at ¶¶ 6–7. After holding him there until late that afternoon, the agents transported him to Fresno, California, and then to Mesa Verde ICE Processing Center, where he remains detained. Doc. 1 at ¶¶ 36–39, 42.

On October 8, 2025, petitioner appeared for his first master calendar hearing in immigration court, and he requested that the immigration judge order his release on bond. Doc. 1 at ¶ 42. The immigration judge found that she lacked jurisdiction to grant petitioner release on bond, finding that petitioner was detained pursuant to 8 U.S.C. § 1225(b)(2)(A), a statutory provision which mandates detention and does not offer the opportunity for a bond hearing. *Id.*

**II.   Legal Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S.

---

[2] Petitioner notes that he intends to file an application for asylum and withholding of removal. Doc. 1 at ¶ 29.

3

531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### III. Discussion

#### a. Likelihood of Success on the Merits

Petitioner argues that the immigration judge erred in concluding that he was mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2)(A). *See* Doc. 2 at 12–18. This case is one of statutory interpretation, and the Court's analysis begins with the text of the statute. *See Lackey v. Stinnie*, 604 U.S. 192, 199 (2025).

#### i. Statutory Framework

Two statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. §§ 1225 and 1226. Section 1225 governs the detention of noncitizens seeking admission into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). As relevant here, section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025). "Other than this limited exception[,] . . . detention under § 1225(b)(2) is considered mandatory . . . [and] [i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025).

While section 1225 "authorizes the Government to detain certain aliens *seeking admission into the country*," section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) sets out the "default rule" for noncitizens already present in the country. *Id.* at 288. It provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. . . . [T]he Attorney General--
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on--
> (A) bond . . . ; or
> (B) conditional parole . . . .

8 U.S.C. § 1226(a). "Section 1226(a), therefore, establishes a discretionary detention framework." *Lopez Benitez*, 2025 WL 2371588, at *3 (internal citations omitted). An immigration officer makes the initial determination to either detain or release the noncitizen, but after that decision has been made, the noncitizen may request a bond hearing before an immigration judge. 8 C.F.R. § 1236.1(c)(8), (d)(1). At any such bond hearing, "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'" *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).[3]

### ii. Section 1225(b)(2)(A) Does Not Apply to Petitioner.

The government argues that the applicable detention authority in this case is section 1225(b)(2)(A), as the immigration judge concluded, because petitioner is an "applicant for admission." *See* Doc. 10 at 3. The statute defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United

---

[3] The government argues that petitioner was provided a hearing on October 8, 2025, and that is all that is required under § 1226(a). Doc. 10 at 3–4. However, the immigration judge concluded that she did not have jurisdiction to consider petitioner's bond request, *see* Doc. 1 at ¶ 42, and therefore did not consider whether petitioner was a flight risk or danger to the community, as required by *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006). The hearing therefore did not afford petitioner the procedures of § 1226(a).

5

States after having been interdicted in international or United States waters).*"* 8 U.S.C. § 1225(a)(1).

The government's argument that section 1225(b)(2)(A) applies to all noncitizens present in the United States without admission is unpersuasive. The government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice.[4] As other courts have concluded, "[f]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025); *see also Lopez Benitez*, 2025 WL 2371588, at *5. As an initial matter, there is no evidence in the record that an "examining immigration officer" made these determinations.

The government's proposed interpretation of the statute ignores the plain meaning of the phrase "seeking admission." *Martinez*, 2025 WL 2084238, at *6. "Seeking" means "asking for" or "trying to acquire or gain." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking. And the use of a present participle, "seeking," "necessarily

---

[4] Other district courts have reached a similar conclusion. *See, e.g.*, *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *9 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025); *Vasquez Garcia v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE, Doc. 20 (W.D. La. Aug. 27, 2025); Doc. 11, *Benitez v. Noem*, No. 5:25-cv-02190 (C.D. Cal. Aug. 26, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Aguilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Rocha Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted* 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); Doc. 11, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM, *13 (C.D. Cal. July 28, 2025).

implies some sort of present-tense action." *Martinez*, 2025 WL 2084238, at *6. The term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). And "entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre,* 14 I & N Dec. 467, 468 (1973)). To piece this together, the phrase "seeking admission" means that one must be actively "seeking" "lawful entry." *See Lopez Benitez*, 2025 WL 2371588, at *7.[5]

However, petitioner is not actively "seeking" "lawful entry" because he already *entered* the United States three years ago. If anything, petitioner is seeking to *remain* in the United States. As the *Lopez Benitez* court noted:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for more than two years.

*Lopez Benitez*, 2025 WL 2371588, at *7; *see also Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("[S]eeking admission' implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

While petitioner could be considered an "applicant for admission" because he is an "alien

---

[5] This understanding is further buttressed by the fact that "lawful entry" may occur only after "inspection and authorization by an immigration officer," *see* 8 U.S.C. § 1101(a)(13), a process that typically must occur at the border or other port of entry. *See Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021) (explaining that "inspection and authorization" must "take place at a 'port of entry'" for one to be considered to have "lawfully entered"). The regulations that set out "inspection procedures" make clear that inspection is a procedure that occurs at ports of entry. *See* 8 C.F.R § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection.").

present in the United States who has not been admitted," as defined at 8 U.S.C. § 1225(a)(1), the government has failed to show that, over 3 years after he entered the country, petitioner was actively "seeking admission." The government's "selective reading of the statute . . . ignores its 'seeking admission' language." *Martinez*, 2025 WL 2084238, at *6. As the *Lopez Benitez* court noted: "If, as the government argues, [section] 1225(b)(2)(A) was intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez*, 2025 WL 2371588, at *6.[6] The rule against surplusage counsels that "'every clause and word of a statute' should have meaning." *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)); *League of California Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1019 (9th Cir. 2024) ("The rule against surplusage generally prohibits [a court] from interpreting [a statute] in a way that 'mak[es] a part of it unnecessary.'" (quoting *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1105 (9th Cir. 2023)). The government's position would make the "seeking admission" language meaningless and violate the rule against surplusage. *Martinez*, 2025 WL 2084238, at *6; *Lopez Benitez*, 2025 WL 2371588, at *6.

The government's argument also disregards the context of sections 1225 and 1226 and the broader statutory scheme. As the Supreme Court noted in *Jennings*, section 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. Section 1225 "authorizes the Government to detain certain aliens *seeking admission* into the country," whereas section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.*, 583 U.S. at 289 (emphasis added).

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v.*

---

[6] "That is, rather than stating that mandatory detention is required for any 'applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted,' the statute would instead provide for mandatory detention for any 'applicant for admission, if the examining immigration officer determines that [the] alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted.'" *Lopez Benitez*, 2025 WL 2371588, at *6 (quoting 8 U.S.C. § 1225(b)(2)(A)).

*Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989).  The title of section 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225.  "Inspection" is a process that occurs at the border or other ports of entry.  *See Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021) (explaining that "inspection and authorization" must "take place at a 'port of entry'" for one to be considered to have "lawfully entered"); 8 C.F.R § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection."). The title of section 1225 also refers to "expedited removal," which applies to a noncitizen "who is arriving in the United States" and "is inadmissible."  *See* 8 U.S.C. § 1225(b)(1)(A).  Additionally, section 1225(a)(2) prohibits the admission of "stowaways"—noncitizens "who obtain[] transportation without the consent of the owner . . . of any vessel or aircraft through concealment aboard such vessel or aircraft," 8 U.S.C. § 1101(a)(49)—who would be discovered at the border or a port of entry.  8 U.S.C. § 1225(a)(2).[7]

The third problem with the government's argument is that application of section 1225(b)(2)(A) to noncitizens already in the country would render superfluous a recent amendment to section 1226(c).  *See Gomes*, 2025 WL 1869299, at *5.  Although section 1226(a) sets out a discretionary detention scheme, section 1226(c) provides an exception which mandates detention for noncitizens who have committed certain crimes.  *See* 8 U.S.C. § 1226(c)(1)(E). Section 1226(c)(1)(E), which was added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen (i) who is inadmissible under section 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (ii) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes.  8 U.S.C. § 1226(c)(1)(E) (emphasis added); *see Gomes*, 2025 WL 1869299, at *5 (explaining statutory section).

If every "applicant for admission"—which is defined, as relevant here, as an "alien present in the United States who has not been admitted," *see* 8 U.S.C. § 1226(a)(1)—is already

---

[7] There are no similar references in section 1226.  *See* 8 U.S.C. § 1226.  Section 1226 references circumstances that logically would occur inside the country, such as the detention of certain "criminal aliens" upon their release from a correctional facility and the issuance of detainers to "State [or] local officials."  *See* 8 U.S.C. § 1226(c)(1), (3).

9

subject to mandatory detention under section 1225(b)(2)(A), as the government contends, there would have been no need for the new section 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United States without being admitted or paroled" *and* who has been "charged with, arrested for, or admits to" committing certain crimes, *see* 8 U.S.C. § 1226(c)(1)(E). Reading section 1225 as the government proposes would thus render section 1226(c)(1)(E) superfluous. *See Gomes*, 2025 WL 1869299, at *5; *Lopez Benitez*, 2025 WL 2371588, at *7; *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

"When Congress acts to amend a statute, [the Court] presume[s] it intends its amendment to have real and substantial effect." *See Stone v. I.N.S.*, 514 U.S. 386, 397 (1995); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Section 1226(c)(1)(E) is a detention provision; it has no other purpose. *See* 8 U.S.C. § 1226(c)(1)(E). If all noncitizens present in the United States without lawful admission were subject to mandatory detention under section 1225(b)(2)(A) already—as the government argues—section 1226(c)(1)(E) would be superfluous. *Maldonado*, 2025 WL 237441, at *12 ("If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless.").

The government does not argue that any detention provision other than section 1225(b)(2)(A) applies to petitioner, and it appears that the only provision that could have applied is the "default rule" of section 1226(a), which "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 288–89. The government previously applied section 1226(a) to noncitizens, such as petitioner, who entered the country without admission. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 n.6 (B.I.A. 2025) ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."); Inspection

10

and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."); *Martinez*, 2025 WL 2084238, at *6.  While divining the meaning of a statute belongs to the "independent judgment" of the courts, "'the longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is.'"  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86, 412 (2024) (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)).  The Court finds that the government's longstanding practice, under which section 1226(a), and not section 1225(b)(2)(A), would have applied to petitioner's circumstances, is consistent with the text and statutory scheme.  *See, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *8 (reaching same conclusion).[8]

The argument that section 1225(b)(2)(A) applies to petitioner also disregards the different due process considerations at issue for noncitizens encountered at the border or ports of entry, versus for noncitizens who have established residence in this country.  As the court in *Romero* noted, applying section 1225 to those stopped at the border and section 1226 to those already in the country

> is consistent with the long history of our immigration laws and with the Constitution. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed.2d 653 (2001). "It is therefore reasonable to read these statutes 'against [that] backdrop.'" *Hewitt v. United States*, 145 S. Ct. 2165, 2173 (2025)).

*Romero*, 2025 WL 2403827, at *12–13; *cf. Lopez-Campos*, 2025 WL 2496379, at *9–10 (finding that the government's application of section 1225(b)(2)(A) in similar circumstances violated detainee's due process rights).

---

[8] The fact that the government's new interpretation of the statute conflicts with years of prior interpretation also supports that petitioner has, at a minimum, shown that there are serious questions going to the merits of its claims regarding the statute's interpretation.

In sum, the Court concludes that petitioner is likely to succeed on the merits of his claim that he is not subject to mandatory detention under section 1225(b)(2)(A).[9]

### b. Irreparable Harm

Turning to the second *Winter* factor, petitioner has established that he will be irreparably harmed absent a preliminary injunction. "The government has taken the position that in the absence of preliminary injunctive relief, it remains free to subject [petitioner] to mandatory detention under section 1225(b)(2), a provision that is not applicable to [him], and provide [him] with no additional process to challenge [his] detention." *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *12 (N.D. Cal. Sept. 26, 2025). "Obviously, the [unlawful deprivation] of liberty is a . . . severe form of irreparable injury." *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005). Thus, the misapplication of section 1225(b) causes "immediate and irreparable injury." Doc. 11 at 9, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM (C.D. Cal. July 28, 2025); *Valencia Zapata*, 2025 WL 2741654, at *12.

### c. Balance of Hardships and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). In immigration court,

---

[9] The government also argues that the appropriate remedy, if the immigration judge erred, is an appeal to the Board of Immigration Appeals ("BIA"), rather than a habeas petition in this Court. Doc. 10 at 4. This appears to be an argument that petitioner should be required to exhaust his administrative remedies. In a case such as this one, the "exhaustion requirement is prudential, rather than jurisdictional," and therefore may be waived "if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). As explained in section III.b., petitioner has established a likelihood that he will suffer irreparable injury without a temporary restraining order. Given that showing of irreparable harm, and where several additional months may pass before the BIA renders a decision on a pending appeal, the Court waives any prudential exhaustion requirement. *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1254 (W.D. Wash. 2025) (waiving prudential exhaustion requirement in similar circumstances); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019). In addition, pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are "seeking admission" for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained. *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025). In light of the statutory interpretation of § 1225(b) and § 1226 addressed above, the Court finds the BIA's decision in *Matter of Yajure Hurtado* unpersuasive.

12

1  custody hearings are routine and impose a "minimal" cost. *Doe v. Becerra*, No. 2:25-cv-00647-
2  DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025). Faced with a choice "between
3  [these minimally costly procedures] and preventable human suffering," the Court concludes "that
4  the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996
5  (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

6  The public interest also weighs in petitioner's favor. "The public has a strong interest in
7  upholding procedural protections . . ., and the Ninth Circuit has recognized that the costs to the
8  public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL
9  1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST,
10 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021).

### d. Remedy

The purpose of a preliminary injunction is to return the parties to the status quo ante, which is "not simply [] any situation before the filing of a lawsuit, but instead [] 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). The government argues that petitioner was detained pursuant to section 1225(b)(2)(A) and has denied that petitioner was detained under section 1226, the only provision that could apply. But "detention under section 1225(b)(2) was improper." *Chogllo Chafla v. Scott*, No. 2:25-CV-00437-SDN, 2025 WL 2688541, at *11 (D. Me. Sept. 22, 2025). Thus, the last uncontested status would be the moment before petitioner was unlawfully detained under that provision.

Moreover, the government did not comply with the express terms of section 1226 when it detained petitioner, so the Court cannot conclude that he is now detained on that basis. "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)." *Chogllo Chafla*, 2025 WL 2688541, at *11. "Section 1226(a) plainly states: '*On a warrant issued by the Attorney General*, a [noncitizen] may be arrested and detained . . . .*" *Chogllo Chafla*, 2025 WL 2688541, at *11 (quoting 8 U.S.C. § 1226(a)). "As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Id.* "To put it simply, [petitioner's] detention[] [is] improper because there is no evidence in the record that [he

13

was] arrested pursuant to a warrant." *Id.* "Since the Government did not comply with the plain language of section 1226(a), [petitioner's] immediate release is justified." *Id.*; *Chiliquinga Yumbillo v. Stamper*, No. 2:25-CV-00479-SDN, 2025 WL 2783642, at *5 (D. Me. Sept. 30, 2025) (reaching the same conclusion).

If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

**IV.    Conclusion and Order**

Accordingly, petitioner's motion for preliminary injunction, Doc. 2, is GRANTED. The Court ORDERS that respondents release petitioner immediately. If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this, and the government has not established a need to impose a security bond.

Petitioner may file a brief on the merits within 30 days. Respondents may file an additional brief related to the merits of the petition within 30 days thereafter, and petitioner may file a reply brief within 15 days of respondents' brief. Alternatively, the parties may stipulate to a different briefing schedule or to submitting the petition on the merits based on the current record.

IT IS SO ORDERED.

Dated:    October 27, 2025

UNITED STATES DISTRICT JUDGE